DAVID M. GLOVER, Judge
Cynthia Bailey appeals the Pulaski County Circuit Court's termination of her parental rights to her two children, a daughter, SB, born July 21, 2013, and a son, KW, born December 15, 2016.[1] Pursuant to Linker-Flores v. Arkansas Department of Human Services , 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), her counsel has filed a no-merit brief purporting to set forth all adverse rulings from the termination hearing and asserting there are no issues that would support a meritorious appeal. Her counsel has also filed a motion asking to be allowed to withdraw as counsel. The clerk of this court notified Bailey of her right to file pro se points of appeal, which she has done. We affirm the termination of Bailey's parental rights and grant her counsel's motion to withdraw.
Standard of Review
Termination of parental rights is a two-step process requiring a determination that the parent is unfit, and that termination is in the best interest of the children. Griffin v. Arkansas Dep't of Human Servs. , 2017 Ark. App. 635. The first step requires proof of one or more statutory grounds for termination; the second step requires that termination be in the children's best interest. Id. Each of these requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. Id.
We review termination-of-parental-rights cases de novo, but we will not reverse the circuit court's ruling unless its findings are clearly erroneous. Gonzalez v. Arkansas Dep't of Human Servs. , 2018 Ark. App. 425, 555 S.W.3d 915. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit court's personal observations. Id.
Case History
Bailey was pulled over in the early morning hours of July 11, 2016, for driving with no headlights. She gave the officers a false name; she could not provide vehicle registration or insurance; and the officers observed SB unrestrained in the back seat of the vehicle. Bailey became combative *475 when the officers attempted to take her into custody, running into traffic with SB and using the child as a shield. Bailey was arrested and charged with second-degree endangering the welfare of a minor, obstruction, driving without headlights, and DWI. She stated she was four months pregnant, and while she asserted she was drug free, a drug screen revealed PCP in her system. Bailey refused to give officers any information about SB or relatives who could take care of SB; therefore, SB was placed in the custody of the Arkansas Department of Human Services (DHS).
DHS filed a petition for emergency custody and dependency-neglect on July 13, 2016, and an order granting custody to DHS was entered the same day. Bailey stipulated to probable cause, and a probable-cause order was entered on July 20, 2016. SB was adjudicated dependent-neglected in an order entered on August 30, 2016, due to Bailey's neglect and parental unfitness. Concurrent goals of the case were reunification with Bailey or a permanent custodian, including permanent custody with a fit and willing relative. In a review order entered on December 14, 2016, it was noted SB was doing well in a provisional foster home with her maternal cousin; the concurrent goals of the case remained reunification with Bailey or obtaining a permanent custodian. The review order noted Bailey was partially compliant with the case plan and court orders-although she had completed parenting classes and was appropriate overall with SB during visitation, she was not cooperative with DHS at times, had missed several visitations, and even though currently pregnant, continued to test positive for illegal substances, specifically PCP and cocaine.
Bailey gave birth to KW in December 2016. KW was removed from Bailey's custody because both KW and Bailey tested positive for PCP at the time of his birth. A petition for emergency custody of KW and an order granting emergency custody to DHS were filed on December 19, 2016. Bailey stipulated to probable cause due to the positive tests for PCP, and a probable-cause order was entered on December 22, 2016. In an order entered on February 3, 2017, KW was adjudicated dependent-neglected based on Bailey's stipulation of neglect and parental unfitness, specifically that she tested positive for PCP at KW's birth; the circuit court also ordered SB's and KW's cases to be consolidated.
In a review order entered on March 30, 2017, the circuit court continued custody of SB and KW with DHS, finding Bailey had partially complied with the case plan and court orders. The circuit court noted Bailey had been admitted to two inpatient substance-abuse-treatment centers, but she had completed only two weeks of treatment at one treatment center, had tested positive for PCP and cocaine immediately before entering the second treatment center, and was involuntarily discharged from the second treatment center due to disputes with other residents. Though Bailey had missed several visitations with her children before she was admitted to the second treatment center, she attended more visitations than she missed, and most of her interactions with the children were appropriate.
In a permanency-planning order entered on July 17, 2017, the circuit court revised the children's case-plan goals to first attempt to obtain a permanent custodian, including permanent custody with a fit and willing relative; the children were currently being cared for by a relative willing to pursue permanent custody. The concurrent goal was to obtain a guardianship. The circuit court found Bailey had partially complied with the case plan and court orders but concluded she was not making *476 significant measurable progress and was not diligently working toward reunification. Specifically, the circuit court noted Bailey's hair-shaft drug screen that was positive for PCP; her refusal to submit to drug screens on five occasions; the abnormal temperature of another drug screen; and the fact Bailey was in her third inpatient substance-abuse-treatment program. However, in a review order entered on August 11, 2017, the circuit court found that while the children could not be safely returned to Bailey, she had substantially complied with the case plan and court orders and had demonstrated progress toward the case-plan goals.
In a consolidated amended fifteen-month permanency-planning order for SB and review order for KW, the circuit court changed the goal for both children to adoption, noting that the relative caring for the children was no longer willing to pursue permanent custody or guardianship, and that termination of parental rights was in the children's best interest. The circuit court further found Bailey was not complying with the case plan and the orders of the court, and she was not diligently working toward reunification.
DHS filed a petition to terminate parental rights on February 15, 2018, alleging three bases applicable to Bailey-(1) the juveniles had been adjudicated dependent-neglected and had continued out of Bailey's custody for a period of twelve months, and despite a meaningful effort by DHS to correct the conditions causing removal, the conditions had not been remedied ( Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) ); (2) other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate placement of the juveniles in Bailey's custody is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, Bailey had manifested the incapacity or indifference to remedy the subsequent issues or factors or to rehabilitate the circumstances preventing placement of the juveniles in Bailey's custody ( Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) ); and (3) the juveniles were subjected to aggravated circumstances ( Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(A) ). After a hearing on the termination petition, the circuit court found it was in the children's best interest for Bailey's parental rights to be terminated and granted the termination on the grounds of twelve months failure to remedy and aggravated circumstances. A termination order to this effect was entered on April 11, 2018.
At the termination hearing, Bailey testified that it had been "a while" since she had used illegal drugs; she knew she had a drug problem, specifically with PCP; she had completed inpatient drug treatment and had begun outpatient drug treatment, although she had not yet completed it; her visits with the children were "swell"; and she believed the children could be returned to her that day because she had completed the majority of what the circuit court had asked her to do. However, Bailey could not remember her sobriety day, and although she asserted she was working on a twelve-step program and was on step two, she could not tell the circuit court what either step one or step two were. Bailey admitted she had submitted to five drug screens since the last hearing, all of which were positive for PCP; she stated that while she was then approximately four months pregnant, she was not worried that her continued use of PCP would affect her pregnancy. Bailey eventually admitted she had last used PCP three days before the termination hearing, and if the court tested her, she would test positive for PCP.
*477 DHS caseworker Lauren Hill testified she had attempted to obtain fifty drug screens from Bailey; she was able to obtain specimens for forty-one screens; twenty were positive; nineteen were negative; two were negative but had abnormal temperatures; and the last completed drug screen was positive for PCP but was determined to be diluted. Hill further testified that out of 171 possible visitations, Bailey made 112. Hill was troubled with Bailey's continued use of PCP throughout the case, including the fact KW was born with PCP in his system and that Bailey was continuing to use PCP during her current pregnancy. Hill explained she was concerned that if the children were returned to Bailey's custody, they would be in an unstable and unpredictable environment and exposed to Bailey's continued drug use.
Danyetta Pride, the DHS adoption specialist assigned to the case, testified she had run a potential adoption data-matching list for both children, and there were 435 approved adoptive homes desiring children with the characteristics of SB and KW. Pride stated she did not know of any issues that would be a barrier to the children being adopted.
Adverse Rulings
The sole adverse ruling was the termination of Bailey's parental rights. While the circuit court terminated Bailey's parental rights on two bases, there need be proof of only one ground to support the circuit court's termination of parental rights. Allison v. ArkansasDep't of Human Servs. , 2017 Ark. App. 424. DHS proved by clear and convincing evidence the children had been out of Bailey's custody for more than twelve months and that, despite meaningful efforts by DHS to correct the conditions that caused removal, the conditions had not been corrected. The circuit court's termination on this ground was not clearly erroneous. The reasons SB and KW were taken into DHS custody were due to Bailey's illegal drug use. Bailey tested positive for PCP at the time SB was taken into custody, and KW was taken into custody because both he and Bailey tested positive for PCP at his birth. During this case, Bailey continued to test positive on numerous occasions for several illegal drugs, including PCP, despite having completed inpatient drug treatment (after three attempts) and partially completing outpatient drug treatment. Bailey's own testimony at the termination hearing revealed she had used PCP a mere three days before the termination hearing, despite being pregnant with her third child. Bailey informed the circuit court she had no concern that her continued use of PCP would have a detrimental effect on her pregnancy. Clearly, Bailey has been unable to correct the issue that caused removal of the children-her continued drug use.
The circuit court also found it was in the children's best interest to terminate Bailey's parental rights. A best-interest finding must be based on the trial court's consideration of at least two factors: (1) the likelihood that the child will be adopted if parental rights are terminated and (2) the potential harm caused by continuing contact with the parent. Baxter v. Arkansas Dep't of Human Servs. , 2017 Ark. App. 508. It is the overall evidence-not proof of each factor-that must demonstrate termination is in the child's best interest. Id.
As to the adoptability factor, Danyetta Pride testified the children were adoptable, with 435 families desiring to adopt children with their characteristics. Pride knew of no issues that would prevent the children from being adopted. This evidence was unrebutted.
*478 Regarding the potential-harm factor, Bailey's own testimony indicated she had been using PCP throughout the pendency of the case, and she was still using it, even though she was currently pregnant again. The potential-harm analysis is to be conducted in broad terms-the circuit court must consider harm to the children's health and safety that might occur from continued contact with the parent; there is no requirement to find actual harm would result or to identify the potential harm. Barnes v. Arkansas Dep't of Human Servs. , 2017 Ark. App. 525. Bailey's continued drug use is enough to prove potential harm. Smith v. Arkansas Dep't of Human Servs. , 2018 Ark. App. 380, 555 S.W.3d 896.
Pro Se Points
Bailey has also filed pro se points. She acknowledges her drug addiction caused her to lose custody of her children, but she asserts she has "made the mandatory steps" necessary to be drug free and be a mother to her children. Bailey requests that our court reconsider the termination of her parental rights because she loves her kids and misses them. This does not provide an arguably meritorious basis for appeal. As discussed above, the circuit court was not clearly erroneous in its determination that DHS presented clear and convincing evidence of a ground for termination and that it was in the children's best interest for Bailey's parental rights to be terminated. Bailey is essentially asking this court to reweigh the evidence, which we will not do. Baxter, supra.
Summary
Counsel concludes that the record clearly and convincingly supports the decision of the circuit court to terminate Bailey's parental rights, and any argument challenging the statutory grounds or challenging the best-interest finding would be wholly frivolous. We agree the appeal is without merit, affirm the termination of Bailey's parental rights, and grant counsel's motion to withdraw.
Affirmed; motion to withdraw granted.
Gruber, C.J., and Murphy, J., agree.

The parental rights of SB's father, Andrea Graves, were also terminated; he is not a party to this appeal.