--------
ROBERT J. GLADWIN, Judge *276 Counsel for Angelica Rylie brings this no-merit appeal from the Saline County Circuit Court's order entered on November 15, 2017, terminating Rylie's parental rights to TB, born September 20, 2016. Rylie filed a notice of appeal on December 6, 2017, and, pursuant to Linker-Flores v. Arkansas Department of Human Services , 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i) (2017), counsel has filed a no-merit brief setting forth all adverse rulings from the termination hearing and asserting that there are no issues that would support a meritorious appeal; the sole adverse ruling was the termination. Counsel has also filed a motion asking to be relieved. The clerk of this court sent a copy of the brief and motion to be relieved to Rylie's last-known address, informing her that she had the right to file pro se points for reversal under Arkansas Supreme Court Rule 6-9(i)(3). Rylie filed pro se points on appeal, and the Arkansas Department of Human Services (DHS) filed a response, asking that the termination order be affirmed. We grant counsel's motion to withdraw and affirm the order terminating Rylie's parental rights.
Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. Griffin v. Ark. Dep't of Human Servs. , 2017 Ark. App. 635, 2017 WL 5762415. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(B), (A) (Repl. 2015). Each of these requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. Id. Our review is de novo. Bentley v. Ark. Dep't of Human Servs. , 2018 Ark. App. 125, 2018 WL 847225. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. Lazaravage v. Ark. Dep't of Human Servs. , 2018 Ark. App. 29, 541 S.W.3d 450. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In resolving the clearly-erroneous question, the reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. Id.
Rylie's child was taken into custody by DHS after Rylie admitted to multiple instances of substance abuse up to one week prior to delivery of TB. Rylie tested positive for methamphetamine and cocaine after TB's birth and admitted that she did not have proper housing and had no baby supplies. Further, Rylie had parental rights terminated to three other children.[1]
*277 The circuit court adjudicated TB dependent-neglected in an order entered November 28, 2016, due to abuse, neglect, and parental unfitness. The circuit court found that Rylie's engaging in conduct creating a realistic and serious threat of death, permanent or temporary disfigurement, or impairment of any bodily organ was abuse. Rylie's failure to provide necessary shelter was neglect, and her use of an illegal substance while pregnant was proof of her unfitness as a parent. At a review hearing three months later, the court found that reunification should remain the goal but found that Rylie had been arrested shortly after the November hearing; her parole had been revoked, and she had been in the custody of the Arkansas Department of Correction (ADC). Rylie completed a psychological evaluation and participated in visitation, random drug screening, individual counseling, and parenting education. At the review hearing in June 2017, the goal remained reunification, and the circuit court noted that Rylie had partially complied by completing parenting education while in the ADC. Rylie also had participated in visitation and had begun individual counseling. However, she was arrested again shortly after her release from prison; she had no stable income or employment; and she only participated in the drug-and-alcohol assessment the week before the hearing. The court ordered Rylie to submit to a hair-follicle examination, among other things.
DHS filed a petition for termination of parental rights on August 18, 2017, alleging that Rylie had her parental rights involuntarily terminated as to a sibling of the child. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(4) . DHS also alleged that there were several potential adoptive placements for the child and that the child would be subjected to potential harm if placed back in Rylie's custody due to Rylie's continued use of marijuana and methamphetamine.
At the termination hearing held October 2, 2017, Rylie's caseworker, Tanner Marshall, testified that he had prepared a court report, which was introduced into evidence. The report sets forth that Rylie had tested positive for methamphetamine and cocaine after TB was born and that she had admitted using both drugs during her pregnancy. She also admitted that she did not have suitable housing or the supplies needed for TB. DHS placed a hold on TB on September 22, 2016, and he was placed with a foster family with whom he remained throughout the case. Rylie was imprisoned for absconding, and she was released on May 22, 2017, but arrested on May 30, 2017, and charged with assault on a family member after she had become angry because her ex-boyfriend had slept with her cousin. Rylie tested positive for THC on July 27, 2017, and she had also tested positive for methamphetamine in the same month. Tanner testified that Rylie entered inpatient treatment two weeks prior to the termination hearing. Tanner requested on behalf of DHS that Rylie's parental rights be terminated because of her continued drug use.
Sandra Marfoglio-Hinton, an adoption specialist for DHS, testified that TB's adoptability was very likely. She said that there were 521 possible matches in their database, which meant that there were 521 foster homes interested in adopting a child who shared TB's characteristics.
The circuit court entered an order on November 15, 2017, terminating Rylie's parental rights, finding by clear and convincing evidence that Rylie's parental rights had been involuntarily terminated as to a sibling of the child. The court also found that it was in TB's best interest to terminate Rylie's parental rights after considering both the likelihood of adoption and the potential harm to his health and safety by returning him to Rylie. The court specifically found that Rylie continued to have an unresolved drug problem.
Counsel argues that there is no meritorious challenge to the circuit court's termination decision. Only one ground must be proved to support termination. Reid v. Ark. Dep't of Human Servs. , 2011 Ark. 187, 380 S.W.3d 918. Counsel contends that termination is supported by the ground relied on by the circuit court-Rylie had her rights involuntarily terminated to TB's sibling pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(4) . Counsel notes that even if there had been a dispute regarding whether termination was involuntary regarding one child because the order states that Rylie had consented, a second termination was wholly based on a finding that aggravated circumstances existed, and Rylie's rights were involuntarily terminated. Further, Rylie did not dispute that her rights had been involuntarily terminated due to her drug use.
Counsel also claims that the testimony from the adoption specialist is sufficient evidence supporting the likelihood of TB's adoption. See Cobbs v. Ark. Dep't of Human Servs. , 87 Ark. App. 188, 189 S.W.3d 487 (2004). Further, Rylie's drug use and her overall instability relating to her repeated incarceration demonstrated the potential harm TB was at risk of suffering if he were returned to her. See Tillman v. Ark. Dep't of Human Servs. , 2015 Ark. App. 119, 2015 WL 831629.
Counsel claims there were no adverse rulings other than the termination order. Out of caution, counsel addresses three issues. First, Rylie testified that she wanted to complete her drug treatment and had a plan for after her release from inpatient treatment. Her counsel did not give a closing argument, but it could be argued that her testimony was a request for additional time. This was denied by the termination. Counsel contends that this was not reversible error based on her past drug use and failed rehabilitation attempts. A child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. Dozier v. Ark. Dep't of Human Servs. , 2010 Ark. App. 17, 372 S.W.3d 849.
Second, the circuit court failed to hold a permanency-planning hearing within a year of TB's entry into foster care, which occurred prior to the termination hearing. See Ark. Code Ann. § 9-27-338(a)(1) (circuit court shall hold a permanency-planning hearing within 12 months of the child entering foster care). Counsel contends that there is no requirement that a permanency-planning hearing be held prior to the filing of a termination petition or the consideration of it. It is error not to hold a permanency-planning hearing as required, but it is not reversible error as "there is no express remedy for such a failure in the juvenile code."
*279 McKinney v. Ark. Dep't of Human Servs. , 2017 Ark. App. 475, at 14-15, 527 S.W.3d 778, 788. Further, the docket sheet reflects that a timely permanency-planning hearing was scheduled but continued on a motion by Rylie's attorney.
Third, the circuit court failed to enter its termination order within thirty days of the termination decision as required by Ark. Code Ann. § 9-27-341(e). However, the legislature has not provided a remedy for this error in the statute; thus, this is not reversible error. See Blasingame v. Ark. Dep't of Human Servs. , 2018 Ark. App. 71, 542 S.W.3d 873.
In her pro se points on appeal, Rylie complains that her past was used against her and that the court did not consider that people change. She also argues that she does not smoke marijuana and that her test showing that she was positive for marijuana was wrong. She contends that the termination was based on this false negative. She contends that she does not smoke marijuana and that her drug of choice was crack cocaine or methamphetamine.
In its response, DHS agrees that there is no merit to the appeal. Rylie's arguments were not made below, and she is barred from raising them now. Mercado v. Ark. Dep't of Human Servs. , 2017 Ark. App. 495, 2017 WL 4399856. Further, these arguments regarding sufficiency are requests that this court reweigh the evidence, which we will not do. Posey v. Ark. Dep't of Human Servs. , 370 Ark. 500, 262 S.W.3d 159 (2007).
We agree with counsel that there is no meritorious basis upon which to argue that the circuit court's decision to terminate Rylie's parental rights was clearly erroneous. As counsel notes, this was the sole adverse ruling from the termination hearing. From our review of the record and the brief presented to us, we conclude that counsel has complied with the requirements for no-merit appeals and that the appeal is wholly without merit. Accordingly, we affirm the termination order and grant counsel's motion to withdraw.
Affirmed; motion to withdraw granted.
MF, born January 6, 2011; NF, born October 30, 2009; and DF, born October 2, 2007. Rylie signed a consent for the termination in DF's, and possibly, NF's cases. However, termination was purely involuntary regarding MF.