Cite as 2020 Ark. App. 230

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-19-853

| | |
|---|---|
| KRISTINE SHIPP | Opinion Delivered April 15, 2020 |
| APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46JV-18-80] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE BRENT HALTOM, JUDGE |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## BRANDON J. HARRISON, Judge

The Miller County Circuit Court terminated the parental rights of Kristine Shipp to her two children, CJ and JG. Shipp's counsel has filed a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup. Ct. R. 6-9(i) (2019), asserting that there are no meritorious issues that could arguably support an appeal and seeking permission to withdraw as counsel. The clerk of this court made several attempts to deliver a copy of counsel's brief and motion to withdraw to Shipp, advising her of her right to file pro se points for reversal pursuant to Ark. Sup. Ct. R. 6-9(i)(3), but those attempts were unsuccessful. We grant counsel's motion to withdraw and affirm the order terminating Shipp's parental rights.

After receiving a report of possible neglect and inadequate supervision, the Arkansas Department of Human Services (DHS) visited the home of Tammy Galloway on 16 June

2018 and found Shipp caring for nineteen-month-old CJ. Shipp, CJ's mother, appeared to be under the influence of illegal substances, and Galloway, CJ's grandmother and legal custodian, was not at home. Shipp admitted using methamphetamine, and a drug test confirmed her use of methamphetamine and amphetamines. Shipp also said that she was pregnant. Galloway returned to the home, denied knowing that Shipp was using methamphetamine, and admitted using THC. DHS determined that CJ could not safely remain in the home, and she was taken into custody. The child had not been bathed in several days, she had a yeast infection in her vaginal area, and medical professionals observed old contusions on her ribs, back, and legs. Shipp gave birth to JG on 30 June 2018, and he was removed from Shipp's custody after she tested positive for amphetamines at birth.

The Miller County Circuit Court authorized emergency custody of both children and later found the children dependent-neglected based on neglect, parental unfitness, and in JG's case, abuse. The goal of the case was set as reunification with the concurrent goal of relative placement/adoption. Shipp was ordered to maintain housing and allow DHS access to the home, obtain employment, submit to a psychological evaluation, complete counseling, submit to random drug screens and rehab if recommended, and maintain regular contact with the children.

In December 2018, the circuit court reviewed the case and noted that Shipp was currently incarcerated and that prior to her incarceration, she had not complied with the case plan or court orders. Specifically, Shipp had not submitted to a drug assessment or psychological evaluation, had not attended counseling, and had not visited the children. As a result of these circumstances, DHS moved to terminate reunification services, asserting

that there was little likelihood that services to the family would result in successful reunification. The circuit court granted the order terminating reunification services in February 2019.

In April 2019, the circuit changed the goal of the case to authorizing a plan for adoption. DHS then petitioned to terminate Shipp's parental rights on subsequent-factors, period-of-incarceration, and aggravated-circumstances grounds. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii), (viii), (ix) (Supp. 2019). The petition noted that Shipp had been sentenced to four years' imprisonment with two years suspended.

At the termination hearing, Pam Cherry, the family service worker assigned to the case, testified that Shipp had been referred for a parenting class and a psychological evaluation but had not completed either. Cherry also said that Shipp had not obtained stable employment or stable housing. And for the last eight months, Shipp had been incarcerated. Cherry stated that Shipp had now been released and was staying at a halfway house. Cherry described Shipp's level of cooperation with DHS as "poor to non-cooperative." Cherry also explained that Shipp had her rights to another child terminated in 2015 and that two other children had been removed from her care and placed with the paternal grandparents.

Gayla Griffin, an adoption specialist, testified that both children are adoptable and that they have a high probability of adoption because they are young, healthy, and do not have serious special needs.

Shipp testified that she did not really start working on her case plan until she went to prison in November 2018. She said that she completed parenting classes while incarcerated and completed a psychological evaluation after she was released from prison.

3

She also stated that she had been employed for two weeks at Linen King where she worked 4:30 p.m. to 1:00 a.m. five days a week. Shipp said she had a drug assessment scheduled for later in the month. She felt as though she had made substantial progress and was asking the judge for more time.

In a written order filed 7 August 2019, the circuit court terminated Shipp's parental rights. The court found that DHS had proved multiple statutory grounds including subsequent factors and aggravated circumstances; the court also found that termination was in the children's best interest considering their adoptability and the potential harm from Shipp's continuing to demonstrate "unwillingness to remedy the situation that caused the removal of the juveniles." Shipp has timely appealed the circuit court's order.

A circuit court's order that terminates parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is proof that will produce in the fact-finder a firm conviction on the allegation sought to be established. *Dinkins, supra.* On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Id.* Only one ground is necessary to terminate parental rights. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008).

4

In her no-merit brief, counsel first asserts that sufficient evidence supports the circuit court's finding of aggravated circumstances. Counsel argues that DHS proved this ground when it introduced the order terminating reunification services and through testimony that Shipp had been incarcerated through much of the case and noncompliant before she was incarcerated. Shipp testified that she started making an effort after she was incarcerated, but counsel contends there is no issue of arguable merit that the circuit court erred in concluding that Shipp's noncompliance during the case and her past history with DHS indicated there was little likelihood that continued services would result in reunification. Shipp did not dispute that she has an extensive history with DHS due to her use of methamphetamine that had resulted in the previous involuntary termination as to one child and the placement of two other children with relatives.

Regarding best interest, counsel notes that an adoption specialist testified that the children are adoptable. Counsel also argues that the circuit court had sufficient evidence to find potential harm, noting Shipp's continued unwillingness to remedy the situation that caused the children's removal. Shipp's addiction to methamphetamine dates to at least 2014, when she gave birth to a child who tested positive for drugs. In this case, Shipp did nothing for the first five months of the case and only started services once she had been incarcerated. Counsel concludes that the evidence supports the circuit court's conclusion that the children would be at risk of harm due to Shipp's instability and history of methamphetamine use.

Finally, counsel notes one possible adverse ruling during closing arguments, when Shipp's counsel asked the court to grant Shipp more time to complete the case plan. This is more properly construed as an argument as opposed to a specific request (which was not

5

ruled on by the court). In any case, counsel asserts that the circuit court did not err in denying this request. The children had been in foster care for a year and were unlikely to be placed in Shipp's custody within a reasonable time from the children's perspective. We have recognized that a child's need for permanency and stability may override a parent's request for additional time to improve her circumstances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849.

We agree that the circuit court had ample evidence on which to find that it was in the children's best interest for Shipp's rights to be terminated and that statutory grounds for termination existed. Thus, we grant counsel's motion to withdraw and affirm the termination of Shipp's parental rights.

Affirmed; motion to withdraw granted.

VIRDEN and VAUGHT, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.